IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| DANNY FOSTER, SR.,           ) | |
| )  | |
| Plaintiff,           ) | |
| )  | |
| v.           ) | CASE NO. 2:21-CV-302-RAH-CSC |
| )  | |
| JEREMY DUERR, *et al.*,           ) | |
| )  | |
| Defendants.           ) | |

## RECOMMENDATION OF THE MAGISTRATE JUDGE

### I. INTRODUCTION

This 42 U.S.C. § 1983 action is before the court on a complaint filed on April 22, 2021, by Danny Foster, a state inmate housed at Ventress Correctional Facility. He brings claims for violations of his equal protection and due process rights and denial of his right of access to the courts based on the Defendants' failure to provide him a ballistics report "on a shooting case that Foster was convicted of in 1996[1]." (Doc. 1 at p. 5; Doc. 5 at p. 3). He names as Defendants the District Attorney for the Fifth Circuit of Alabama, Jeremy Duerr, and Director for the Alabama Department of Forensic Sciences, Angelo Della Manna. (Doc. 1 at p. 2). He seeks declaratory and injunctive relief and "such additional relief as the court may deem just and proper" based on the alleged violations of his constitutional rights. (Doc. 1 at p. 8).

The Defendants filed an answer, special report, as supplemented, and supporting evidentiary materials addressing Plaintiff's claims for relief. In these documents, the Defendants deny violating Plaintiff's constitutional rights. (Doc. 20, Exs. 1-2; Doc. 25, Ex. 1). After the Defendants filed their special reports, the court issued an order directing Foster to file a response to the arguments set forth by the Defendants in the report and advising him that his response

---

[1] Later filings make clear Plaintiff sought documents pertaining to his involvement in a "12-1-1995 shooting into an Occ. Bld." (Doc. 20-1 at p. 6).

should be supported by affidavits or statements made under penalty of perjury and other appropriate evidentiary materials. (Doc. 21 at pp. 1-3). The order specifically advised the parties that "at some time in the future the court may treat the Defendants' report and Plaintiff's response as a dispositive motion and response." *Id*. at p. 2. In addition, the order specifically cautioned the parties that "**unless within fifteen (15) days from the date of this order a party files a response in opposition which presents sufficient legal cause why such action should not be undertaken** . . . the court may at any time [after expiration of the time for the plaintiff filing a response to the order] and **without further notice to the parties (**1) treat the special report and any supporting evidentiary materials as a motion for summary judgment, and (2) after considering any response as allowed by this order, rule on the motion in accordance with the law." *Id.* at p. 3. (Emphasis in original). Foster filed responses to this order. (Doc. 22, Exs. 1-4; Doc. 26, Exs. 1-10; Doc. 27, Exs. 1-4).

Pursuant to the directives of the orders entered in this case, the court deems it appropriate to treat the Defendants' reports as a motion for summary judgment. Upon consideration of the Defendants' motion for summary judgment, the evidentiary materials filed in support thereof, and the sworn complaint, the court concludes that summary judgment is due to be granted in favor of the Defendants.

## II. FACTS

Plaintiff claims that he "contacted the Alabama forensic science office in September 2019 to request a copy of a balistick {sic} report on a shooting case that Foster was convicted of in 1996." (Doc. 1 at p. 5). In his amended complaint, Foster alleges that Alabama law, specifically, "the statue {sic} 36-18-27(c) and 36-18-25(j)(2)[2] intitle {sic} Foster to a copy of the report

---

[2] Both of these Alabama Code sections cited by Plaintiff in support of his claim that he has been wrongfully denied a copy of the ballistics report from a pending case deal specifically with the production of DNA evidence by the State to criminal defendants.

wheather {sic} it's an open investigation or not." (Doc. 5 at p. 3). The form completed by Foster and entitled "Request for Certified Copy" dated September 23, 2019, seeks copies of the ballistics report for the shooting incident which took place in Randolph County on December 1, 1995, (doc. 20-1 at p. 6), and included a money order for $10.00, (doc. 20-1 at p. 7), and a self-addressed stamped envelope for Plaintiff at Ventress Correctional Facility. (Doc. 20-1 at p. 8). This form included language stating that "final reports of the Alabama Department of Forensic Sciences" could be produced, and also specifically stated that "a final report of the Alabama Department of Forensic Sciences is not a public record if there is a pending criminal investigation or judicial proceeding." (Doc. 20-1 at p. 6). Additionally, the form advised that subpoenas maybe required pursuant to 12-21-3.1(b) *Ala. Code* (1975), which states that "[l]aw enforcement investigative reports and related investigative material are not public records. Law enforcement investigative reports, records, field notes, witness statements, and other investigative writings or recordings are privileged communications protected from disclosure."

The Affidavit of Jeremy Duerr, District Attorney for the Fifth Judicial Circuit of Alabama, confirms that the forms filed by Foster requested "an old case from 1995, Discharging a Gun into an Occupied Building (56CC-1996-76)" and explained further that Foster

> "*was never tried or convicted on this case. He was convicted on another case (56CC-1996-48) of Discharging a Gun into an Occupied Dwelling, Assault 1ˢᵗ degree, and Assault 2ⁿᵈ degree. He was sentenced on December 5, 1996,* to 20 years on the Discharging a Gun, 10 years on the Assault 1ˢᵗ degree and l0 years on the Assault 2nd degree charge, all sentences to run consecutive to each other. On December 8, 1996, Mr. Foster escaped from the Randolph County jail and wasn't captured until February 8, 2013.
>
> During the defendant's time of absence, Circuit Judge Howard Bryan on November 9, 1998, ordered that the pending case, (56CC-1996-76) be Withdrawn and Filed due to the fact that the defendant could not be located. *The case was not dismissed against the defendant, this merely kept the case from appearing on the docket every term of Court, so technically this case is still a pending case and therefore I opposed the report being released from Forensic Sciences.*

3

> Mr. Foster also filed a bar complaint against me alleging that I was being unprofessional in denying Forensic Sciences to furnish him a copy of the report. He stated that he has no pending cases against him in Randolph County. *He has since filed a motion to dismiss the pending case against him, which the Circuit Judge denied. So, I state that my refusing to release the Forensic Science report was not a personal attack against Mr. Foster but merely following the long standing policy of the District Attorney's Office that has been in effect for many years."*

(Doc. 20-2 at p. 1). (Emphasis added). Thus, the documents sought by Plaintiff in this action are from a case which was open and pending upon the date of his request, and Defendant Duerr premised his denial of those documents upon a state policy of refusing the production of documents in pending actions. *Id.* Moreover, Duerr confirmed by subsequent affidavit that no prohibition exists to production of the ballistics report from the case involving Foster's November 26, 1995, conviction for assault, case number 56CC-1996-000048. (Doc. 25-1 at p. 1).

The Affidavit of Marc S. Bass, General Counsel for the State of Alabama Department of Forensic Sciences (ADFS) and a State of Alabama Deputy Attorney General, confirms the state policy prohibiting production of documents in pending criminal matters. (Doc. 20-1 at pp. 2-3). Indeed, Bass testified as follows:

> When ADFS receives a request for records, a certain process is conducted to determine whether the records can be provided at that time. First, when ADFS receives the request for reports issued in a particular case, ADFS will see if it has a casein that name. If so, ADFS must determine whether case reports have been issued and if ADFS has completed its scientific analysis. If ADFS has not case for the requested individual, ADFS will notify the requestor of that fact and the request is closed. Once it is determined that ADFS does have case for the requested individual(s), ADFS will then reach out to the applicable prosecuting authority to ascertain, in compliance with the direction and restrictions in <u>Stone v. Consolidated Publishing Co.</u>, 40 So. 2d 678 (Ala. 1981) {sic}[3] and Attorney General's Opinion to the Honorable Michael D. Smith, dated February 8, 1996, A.G. No. 96-00128, whether there is a pending criminal investigation ongoing. This step is critically necessary because, once ADFS has issued its reports, it will not

---

[3] The *Stone* case is incorrectly cited in the affidavit. Although the case dealt with a different factual scenario than the instant action, the court stated, "[r]ecorded information received by a public officer in confidence, sensitive personnel records*, pending criminal investigations,* and records the disclosure of which would be detrimental to the best interests of the public *are some of the areas which may not be subject to public disclosure.*" Stone v. Consolidated Publishing Co, 404 So. 2d 678, 681 (Ala. 1981). (Emphasis added).

> have knowledge whether there is, or is not, a pending criminal investigation ongoing, and, if there is, the scope and/or nature of the investigation -- which is a trigger in the determination of whether the reports issued in a particular case have become public record and are then available upon request. ADFS must rely on the applicable prosecuting authority to inform it whether an investigation exists. If no investigation is ongoing, then the restriction(s) cited above from Stone are applicable and the ADFS reports would be public record, as per the provisions of Ala. Code S 36-18-2. Therefore, if that were the situation, the case reports would be sent to the requestor. *If ADFS is notified that an investigation is ongoing, however, it will notify the requestor that the case reports are not available as public records at that time, but that case reports will become public record(s) should/when the ongoing investigation is complete.*

(Doc. 20-1 at pp. 2-3) (Emphasis added). Bass further confirms that this policy and process was followed in resolving Foster's September 23, 2019, request (doc. 20-1 at pp. 3, 6), and because Foster's request involved a pending case, (doc. 20-1 at pp. 3, 11) the request was denied by October 2, 2019, letter to Plaintiff from ADFS Director, Angelo Della Manna. (Doc. 20-1 at pp. 3-4, 13). The letter to Foster further advised that "at a later date" the ADFS reports may "become public record . . . and at that time . . . will be available upon request and payment of the required fee." (Doc. 20-1 at p. 13).

### III.  SUMMARY JUDGMENT STANDARD

Under Rule 56(a) of the Federal Rules of Civil Procedure, a reviewing court must grant a motion for summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(a). A dispute "is 'genuine' if the record as a whole could lead a reasonable trier of fact to find for the nonmoving party. . . . [A dispute] is 'material' if it might affect the outcome of the case under the governing law." *Redwing Carriers, Inc. v. Saraland Apartments*, 94 F.3d 1489, 1496 (11th Cir. 1996) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The party asking for summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and alerting the court to portions of the record that support the motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). However,

once the movant has satisfied this burden, the nonmovant is similarly required to cite portions of the record showing the existence of a material factual dispute. *Id.* at 324. To avoid summary judgment, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In determining whether a genuine dispute for trial exists, the court must view all the evidence in the light most favorable to the nonmovant and draw all justifiable inferences from the evidence in the nonmoving party's favor. *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003); *see* Fed. R. Civ. P. 56(a).

Although factual inferences must be viewed in a light most favorable to the plaintiff and *pro se* complaints are entitled to liberal interpretation, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *See Beard*, 548 U.S. at 525. Thus, a plaintiff's *pro se* status alone does not compel this court to disregard elementary principles of production and proof in a civil case. Here, after a thorough and exhaustive review of all the evidence which would be admissible at trial, the court finds that Foster has failed to demonstrate a genuine dispute of material fact in order to preclude entry of summary judgment in favor of the defendant. *See Matsushita*, 475 U.S. at 587.

### IV.  DISCUSSION

#### A.  Access to the Courts

Plaintiff alleges that he has been denied access to the courts because Defendants failed to provide him, upon request, a ballistics report pertaining to his involvement in a "12-1-1995 shooting into an Occ. Bld." (Doc. 20-1 at p. 6). The United States Supreme Court has held that a state inmate has the right of access to the courts to file a writ of habeas corpus. *Ex Parte Hull,* 312 U.S. 546, 549, 61 S. Ct. 640, 642, 85 L. Ed. 1034 (1941). This claim was later extended to claims filed under 42 U.S.C. § 1983 seeking relief for deprivation of basic constitutional rights.

*Wolff v. McDonnell,* 418 U.S. 539, 579 (1974). Indeed, within these contexts access to the courts has been defined as "the opportunity to prepare, serve and file whatever pleadings or other documents are necessary or appropriate in order to commence or prosecute court proceedings affecting one's personal liberty, or to assert and sustain a defense therein, and to send and receive communications to and from judges, courts and lawyers concerning such matters." *Hatfield v. Bailleaux,* 290 F. 2d 632, 637 (9th Cir. 1961). However, Plaintiff fails to include any allegations which could be understood, even with a liberal interpretation, to state such a claim. Indeed, he makes no allegations that he has been denied the ability to defend a criminal case against him or to prosecute any action before this court. Moreover, Plaintiff has been advised of procedures by which the requested ballistics report may be made available to him through the subpoena process, *see Ala. Code* 12-21-3.1, or after the ballistics report becomes public record pursuant to *Ala. Code* 36-18-2. (Doc. 20-1 at pp. 6, 13). Rather, the court interprets Plaintiff's claim as one based upon the alleged denial of due process[4] and equal protection under the Fourteenth Amendment. The court will address those claims hereafter.

**B. Fourteenth Amendment – Equal Protection Claim**

In order to present a claim of discrimination cognizable under the Equal Protection Clause,

> "a prisoner must [at a minimum] demonstrate that (1) he is similarly situated to other prisoners who received more favorable treatment; and (2) the state engaged in invidious discrimination against him based on race, religion, national origin, or some other constitutionally protected basis. *Jones v. Ray*, 279 F.3d 944, 946–47 (11th Cir. 2001); *Damiano v. Florida Parole and Prob. Comm'n*, 785 F.2d 929, 932–33 (11th Cir. 1986)."

---

[4] Plaintiff claims that the Defendants, both state actors, have violated his 5th Amendment due process rights by failing to grant him access to the ballistics report from his open case. (Doc. 1 at p. 5; Doc. 5 at p. 3). However, the law is well-settled that the Fifth Amendment Due Process clause applies only to the federal government and its actors. *See Bartkus v. People of the State of Ill.,* 359 U.S. 121, 124 (1959). Thus, the court will analyze Plaintiff's claim under the Due Process clause of the Fourteenth Amendment.

7

*Sweet v. Secretary, Department of Corrections*, 467 F.3d 1311, 1318–19 (11th Cir. 2006). "[O]fficial action will not be held unconstitutional solely because it results in a . . . disproportionate impact. . . . Proof of . . . discriminatory intent or purpose is required to show a violation of the Equal Protection Clause." *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 264-265 (1977). "'Discriminatory purpose' . . . implies more than intent as volition or intent as awareness of consequences.  It implies that the decision maker . . . selected . . . a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Personnel Administrator of Massachusetts v. Feeney*, 442 U.S. 256, 279 (1979) (footnote and citation omitted); *see also Hernandez v. New York*, 500 U.S. 352, 359 (1991).  Evidence which merely indicates disparity of treatment or even arbitrary administration of state powers, rather than instances of purposeful or invidious discrimination, is insufficient to show discriminatory intent.  *McKleskey v. Kemp*, 481 U.S. 279, 292 (1987).

Plaintiff's Equal Protection claim fails on its face because he does not allege that he was denied access to the ballistics report based on some protected constitutional basis, like race religion or national origin.  Moreover, he fails to allege that he was similarly situated to any other person who received more favorable treatment with respect to access to similar state-maintained documents.  *See, Sweet,* 467 F.3d at 1318–19.  Accordingly, summary judgment is due to be granted on the Plaintiff's Fourteenth Amendment Equal Protection Claim.

C. **Fourteenth Amendment - Due Process Claim**

Plaintiff also claims that Defendants violated his due process rights by failing to grant him access to this ballistics report from the open criminal action involving his "12-1-1995 shooting into an Occ. Bld." (Doc. 20-1 at p. 6). The law is well established; "[t]he Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or

8

property; and those who seek to invoke its procedural protections must establish that one of these interests is at stake." *Wilkinson v. Austin,* 545 U.S. 209, 221 (2005). The Plaintiff has pointed to no law which would support his claim that denial of access to the ballistics report in the open criminal action against him is a deprivation of his basic constitutional rights. *Wolff,* 418 U.S. at 579. Moreover, Plaintiff has been advised of procedures by which the requested ballistics report may be made available to him in spite of the instant denial. (Doc. 20-1 at pp. 6, 13).

Even assuming Foster has a constitutional property interest in the disclosure of the ballistics report at this time from the open criminal action against him, the record clearly demonstrates that the State of Alabama has created statutes governing the access to documents in a pending and open state criminal action, and pursuant to this law the Defendants followed a policy for withholding production of the ballistics report to Foster. (Doc. 20-1 at pp. 6, 13). Thus, the court concludes that Defendants' actions were rational in relation to state law and the policy created pursuant thereto; and thus, the denial of Plaintiff's request for a ballistics report in an open criminal state action cannot be found to be an intentional or arbitrary denial of his constitutional rights.

Moreover, the Court is mindful of the *Younger* doctrine which "confine[s] very narrowly the availability of injunctive relief against state criminal prosecutions." *Younger v. Harris*, 401 U.S. 37, 53 (1971). Indeed, following the instruction of *Younger*, the Court refused to grant Plaintiff's claim for injunctive relief, because "the possible unconstitutionality of a statute 'on its face' does not in itself justify an injunction against good-faith attempts to enforce it." *Id.* at 54. Likewise, the Court concludes that based upon a thorough review of the record, Foster "has failed to make any showing of bad faith, harassment, or any other unusual circumstance that

would call for equitable relief." *Id. A*ccordingly, summary judgment is due to be granted on the Plaintiff's Fourteenth Amendment Claims.

## V.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1. The Defendants' motions for summary judgment (docs. 20 and 25) be GRANTED.
2. Judgment be GRANTED in favor of the Defendants.
3. This case be dismissed with prejudice.
4. Costs be taxed against the Plaintiff.

On or before **September 13, 2024,** the parties may file objections to this Recommendation.  A party must specifically identify the factual findings and legal conclusions in the Recommendation to which the objection is made; frivolous, conclusive, or general objections will not be considered.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar a party from a *de novo* determination by the District Court of factual findings and legal issues covered in the report and shall "waive the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions" except upon grounds of plain error if necessary in the interests of justice. 11th Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

**DONE** this 29th day of August, 2024.

/s/   Charles S. Coody
UNITED STATES MAGISTRATE JUDGE